UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **ROBERT THOMAS,**  }  }  **Plaintiff,**  }  }  v.  }  }  **CAROLYN W. COLVIN,**  }  **Commissioner of the**  }  **Social Security Administration,**  }  }  **Defendant.**  } | Case No.: **7:14-CV-2486-MHH** |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Robert Thomas seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied his claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

Mr. Thomas applied for a period of disability and disability insurance benefits and supplemental security income on February 14, 2012. (Doc. 7-6, pp. 2--14). Mr. Thomas alleged that his disability began on February 2, 2009. (Doc. 7-6, pp. 2, 9). Mr. Thomas later asked to amend his alleged onset date to October 29,

2011.  (Doc. 7-3, pp. 49-50; Doc. 7-6, p. 30).  The Commissioner initially denied Mr. Thomas's claims on June 11, 2012.  (Doc. 7-5, pp. 6-15).  Mr. Thomas requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 7-5, pp. 18-9).  The ALJ issued an unfavorable decision on December 20, 2013.  (Doc. 7-3, pp. 22-38).[1]  On November 17, 2014, the Appeals Council declined Mr. Thomas's request for review (Doc. 7-3, pp. 2-5), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g) and § 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "decide the facts anew,

---

[1] The ALJ issued another unfavorable decision on October 28, 2011.  (Doc. 7-4, pp. 5-16).  Mr. Thomas does not challenge that decision in his brief.

2

reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Thomas has not engaged in substantial gainful activity since October 29, 2011, the amended alleged onset date.  (Doc. 7-3, p. 25).  The ALJ determined that Mr. Thomas suffers from the following severe impairments:  post-traumatic stress disorder (PTSD) with anxiety and depression; panic disorder with depression; osteoarthritis; degenerative disc disease of the lumbar spine (DDD); substance abuse addiction, to wit:  alcohol, cocaine, and cannabis; and obesity.  (Doc. 7-3, p. 25).  In addition, the ALJ found that Mr. Thomas suffers from the following non-severe impairments:  hypertension, sleep-related breathing disorders, hearing problems corrected with a hearing aid, and sinusitis.  (Doc. 7-3, p. 25).  Based on a review of the medical evidence, the ALJ concluded that Mr. Thomas does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 7-3, p. 26).

Next, the ALJ determined that if Mr. Thomas stopped his substance abuse, he has the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can sit at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk up to two hours each day without interruption. The claimant can stand and/or walk at least a total of six hours over the course of an eight-hour workday. The claimant can frequently use his upper extremities to reach overhead; he is not otherwise limited with his upper extremities. The claimant can frequently use his lower

>   extremities for pushing, pulling, and the operation of controls. The claimant cannot climb ladders, ropes, poles, or scaffolds; and can frequently climb ramps and stairs. The claimant can frequently balance, stoop, kneel, and crouch; and can occasionally crawl. The claimant can occasionally work while exposed to dusts, odors, gases, and fumes, but the claimant cannot work in poorly ventilated areas. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant cannot work at unprotected heights or operate hazardous machinery. The claimant can frequently operate motorized vehicles and can occasionally work while subject to vibration.
>
>   As for mental limitations, the claimant possesses the concentration, persistence and pace necessary to understand, remember, and carry out simple instructions; can perform simple, routine, and repetitive work activity. Further, the claimant can attend to all customary work pressures over the course of an eight-hour workday with the following exceptions:  he can perform production rate work. However, he cannot perform work that requires him to respond to rapid and/or multiple frequent demands. Changes in his work activity and/or work settings must be infrequent and gradually introduced. The claimant can respond appropriately to supervision; however, he is better suited for and can perform work requiring only occasional supervision. He can frequently interact with co-workers, so long as interaction is less than intensive. Finally, the claimant can frequently interact with the public, so long as the interaction is casual.

(Doc. 7-3, p. 36).

Based on this RFC, the ALJ concluded that Mr. Thomas is not able to perform his past relevant work as a grinder. (Doc. 7-3, p. 33). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Thomas can perform if he stopped the substance abuse, including meat clerk; driver, helper, sales route; food service worker/hospital aide; and hand packager (Doc. 7-3, pp. 37-38).  Accordingly, "[b]ecause the substance

abuse disorder is a contributing factor material to the determination of the disability," the ALJ determined that Mr. Thomas has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 38).

## IV.  ANALYSIS

Mr. Thomas argues that he is entitled to relief from the ALJ's decision because (1) the ALJ's finding that he could perform work at the medium exertional level is not supported by substantial evidence; and (2) the ALJ should have found him disabled under Grid Rule 201.10. The Court addresses each argument in turn.

### A.  The ALJ's finding that Mr. Thomas could perform work at the medium exertional level is supported by substantial evidence.

A residual functional capacity or RFC is an ALJ's assessment of an applicant's ability to perform work activities on a sustained basis despite the limitations that the applicant's impairments create. *Maffia v. Comm'r of Soc. Sec.*, 291 Fed. Appx. 261, 263 (11th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)). The determination of an applicant's residual functional capacity is within the authority of the ALJ, and "the ALJ considers all of the evidence in the record in determining the claimant's RFC." *Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 764 (11th Cir. 2014).  Here, the ALJ found that Mr. Thomas has the RFC to perform medium work with a number of limitations that account for Mr. Thomas's physical and mental impairments. (Doc. 7-3, p. 36). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing

up to 25 pounds." 20 C.F.R. § 404.1567(c). If an individual can perform medium work, the individual also can perform sedentary and light work. *Id.*[2]

In making his RFC determination, the ALJ thoroughly reviewed the medical evidence and the medical opinions in the administrative record. (Doc. 7-3, pp. 24-38). For example, the ALJ examined Mr. Thomas's January 2012 treatment notes from the Tuscaloosa VA Medical Center. (Doc. 7-3, p. 29). During this visit, Mr. Thomas reported mild back pain lasting at most 30 minutes at a time and reported to his physician that a muscle relaxer and NSAIDs alleviated the pain. (Doc. 7-10, p. 97). The ALJ noted that Mr. Thomas denied any radiation of the symptoms, numbness, tingling or weakness. (Doc. 7-10, p. 97). A lumbar spine X-ray showed that Mr. Thomas had "mild [degenerative disc disease] . . . at L5-S1, with slight disc space narrowing."   (Doc. 7-10, p. 99). The X-ray revealed "chronic appearing subchondral sclerosis at the left sacroiliac joint, unchanged" and a small BB type pellet within the anterior abdominal soft tissues. (Doc. 7-10, p. 99). Mr. Thomas's gait was normal, he displayed no scoliosis, and his range of motion in

---

[2] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*  Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a job is in in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "[T]he full range of light work also requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6.

his lumbar spine was "very mildly limited" with flexion and extension. (Doc. 7-10, pp. 99-100).

Dr. Tatiana Lamia recommended canceling a scheduled MRI of Mr. Thomas's spine because "[t]his is not indicated at this time as it will not change our management." (Doc. 7-10, p. 101). Dr. Lamia stated that Mr. Thomas should continue to treat his back pain with naproxen; she also recommended that Mr. Thomas take Flexeril "but only for 5 day intervals when he has a bad flare up. Should not be used indefinitely. . . in patient with [history of] substance abuse and only mild back pain lasting longest 30 minutes at a time." (Doc. 7-10, p. 101). Dr. Lamia also recommended physical therapy sessions.

The ALJ reviewed Mr. Thomas's physical therapy reports from early 2012. (Doc. 7-3, p. 29). During a session on January 23, 2012, the physical therapist noted that Mr. Thomas reported a five-year history of intermittent lower back pain which limited the distance he could walk comfortably. (Doc. 7-10, p. 53). Mr. Thomas reported that his pain level was a three out of ten. (Doc. 7-10, p. 54). The physical therapist observed that Mr. Thomas had normal muscle tone, good coordination, and did not require the use of an assistive device. (Doc. 7-10, pp. 53-54). The physical therapist recommended stretching and stabilization exercises one to two times per week for up to three weeks. (Doc. 7-10, p. 55). The therapist explained that Mr. Thomas demonstrated "good" rehabilitation potential. (Doc. 7-

8

10, p. 55).

At the next physical therapy appointment on January 30, 2012, Mr. Thomas felt decreased pain with modalities and exercise and reported to the therapist that the exercises he performed on his own helped with the intermittent pain located in his right lower back. (Doc. 7-10, p. 26). At the end of his session, Mr. Thomas rated his pain as a two to three out of ten. (Doc. 7-10, p. 26). At his last physical therapy appointment on February 6, 2012, Mr. Thomas rated his pain as a two out of ten and showed overall improvement, although the pain still limited his functional mobility and the distance he could comfortably walk. (Doc. 7-9, p. 85).

In January 2012, Mr. Thomas was screened for vocational rehabilitation. (Doc. 7-10, pp. 91-96). Mr. Thomas expressed interest in working as a machine operator within a factory. (Doc. 7-10, pp. 91, 93). Following a review of the record and an interview, the vocational rehabilitation specialist found that Mr. Thomas had no physical or mental limitations affecting his ability to function in the rehabilitation program. (Doc. 7-10, p. 94). The nurse practitioner and staff physician cleared Mr. Thomas for work programs with no limitations that same month. (Doc. 7-11, p. 44). Mr. Thomas completed his vocational rehabilitation plan in February 2012. (Doc. 7-9, pp. 21-27).

Mr. Thomas sought medical treatment again in October 2012 and reported adequate back pain control with his NSAIDs. (Doc. 7-17, p. 20). In March 2013,

Mr. Thomas sought treatment after he fell in a wet bathtub. (Doc. 7-17, p. 5). Mr. Thomas reported that "he landed on his left side and leg and says it is very painful today. Also stiff." (Doc. 7-17, p. 5). Upon examination, Mr. Thomas moved his left leg "stiffly" and demonstrated "a careful guarded gait." (Doc. 7-17, p. 6). The nurse practitioner diagnosed "acute muscle and soft tissue sprain and bruising." (Doc. 7-17, p. 7). X-rays were negative, and Mr. Thomas's knee film was "not suspicious for fracture or dislocation." (Doc. 7-17, p. 7). At his last recorded medical examination in July 2013, Mr. Thomas did not complain of back pain or problems associated with his injuries after his fall. (Doc. 7-17, p. 10). In light of Mr. Thomas's physical progress, the ALJ concluded that Mr. Thomas's "physical and mental limitations are not independently disabling," and if Mr. Thomas stopped his substance abuse, he could perform medium work. (Doc. 7-3, pp. 35-6).

As evidence of disability, Mr. Thomas cites a number of treatment notes from his visits to VA medical centers between 2008 and 2012. (Doc. 9, pp. 2-3). Over the years, various providers diagnosed Mr. Thomas with major depressive disorder, post-traumatic stress disorder, lower back spasms, and degenerative disc disease. (Doc. 7-13, pp. 32-39, 42; Doc. 7-16, pp. 28-39). In large part, these treatment notes do not contain specific opinions about how these diagnoses and impairments impact Mr. Thomas's ability to work. A finding of disability hinges on the functional limitations that accompany a condition, not the existence of the

10

condition itself. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); *see also Obsborn v. Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Therefore, when considering the entire record, the ALJ did not err in determining that despite Mr. Thomas's physical and mental conditions, Mr. Thomas could perform medium work.

In addition, despite the mental impairments and diagnoses contained in Mr. Thomas's treatment notes, the VA cleared Mr. Thomas for participation in the vocational rehabilitation program with no mental limitations. (Doc. 7-10, p. 94). As the ALJ explained, the records also are inconsistent with Mr. Thomas's progress through the vocational rehabilitation program. (Doc. 7-3, p. 30). For example, in February 2012, Mr. Thomas's recreation therapist noted that Mr. Thomas "displayed good social skills and sportsmanship with staff and other vets.

[Mr. Thomas] expressed enjoyment in playing card games and displayed excitement, seemed to enjoy competing among peers." (Doc. 7-8, p. 76). In March 2012, Mr. Thomas told his social worker that he planned to start playing golf to prevent boredom. (Doc. 7-8, p. 76). Other progress notes demonstrate that Mr. Thomas was attentive, could remain focused, and engaged in discussion. (Doc. 708, pp. 78-80).

Although Mr. Thomas argues that his 45 GAF score undermines the ALJ's RFC assessment, the Court finds that the ALJ had good cause to reject this measure of Mr. Thomas's functioning. This GAF score provides little probative value because it dates from 2008. (Doc. 7-13, pp. 38-39). The ALJ has a duty to develop the record only for a one-year period before the plaintiff's application date. *See* 20 C.F.R. §§ 404. 1512(d), 416.912(d). In addition, the Social Security Commissioner has noted that the GAF scale "'does not have a direct correlation to the severity requirements in our mental disorders listings.'" *Nye v. Comm'r of Soc. Sec.*, 524 Fed. Appx. 538, 545 (11th Cir. 2013) (citing 65 Fed. Reg. at 50765-65).

VA staff psychiatrist Dr. Mary Strong's January 11, 2012 examination of Mr. Thomas does not change the result. (Doc. 7-11, pp. 13-20). Dr. Strong found that Mr. Thomas suffered from cocaine and cannabis dependence, chronic PTSD, recurrent major depression and chronic mental illness. She assessed a GAF score of 46. (Doc. 7-11, p. 20). The ALJ rejected Dr. Strong's findings because "the

hearing level evidence reported a much improved outlook for the claimant." (Doc. 7-3, p. 32). The ALJ also determined that Dr. Strong's opinion "was internally inconsistent in that she noted [Mr. Thomas] was oriented and had intact cognition, yet had a GAF for 46 with a rather guarded prognosis." Substantial evidence supports this determination. *See Poellnitz v. Astrue*, 349 Fed. Appx. 500, 503 (11th Cir. 2009) (holding that the opinion of an examining physician as to marked and extreme limitations was properly discounted due to her own reports); *Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (ALJ properly rejected the opinion of an examining physician because the opinion "was contrary to the opinions and assessments" of other physicians and other medical evidence).

Mr. Thomas also argues that the ALJ's RFC determination is not supported by the evidence because no physician at the VA lifted a 10 pound lifting restriction that Dr. Charles C. Hudson imposed in February 2009. (Doc. 9, p. 3; *see also* Doc. 7-13, p. 16). The single reference to a 10 pound lifting restriction in 2009 does not undermine the ALJ's RFC assessment. Dr. Hudson imposed the 10 pound lifting restriction on February 11, 2009 when he cleared Mr. Thomas to participate in vocational rehabilitation. (Doc. 7-13, p. 16). Following that initial advice, Mr. Thomas received positive physical examinations, vocational treatments, and clearance to participate in the vocational rehabilitation program without physical

limitations. (Doc. 7-10, pp. 91-95; Doc. 7-11, p. 44). Additionally, in 2013, Mr. Thomas's goal was to attend the gym on a weekly basis for three months. (Doc. 7-17, p. 15). At that time, Mr. Thomas's pain was not interfering with his optimal level of functioning or participation in rehabilitation. (Doc. 7-17, p. 15). Even though no VA physician explicitly lifted the 10 pound restriction, more recent treatment notes are inconsistent with Dr. Hudson's 2009 findings. *See McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006) (an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion.").

Finally, the Court is not persuaded by Mr. Thomas's argument that the ALJ should have concluded that Mr. Thomas's sleep apnea is a severe impairment. In his decision, the ALJ noted Mr. Thomas's obstructive sleep apnea diagnosis. The ALJ recognized that Mr. Thomas's sleep apnea results in excessive daytime sleepiness. (Doc. 7-3, p. 25; Doc. 7-3, p. 60). The ALJ also observed that doctors prescribed a continuous positive airway pressure or CPAP machine, which improved Mr. Thomas's delta and rapid eye movement; reduced his arousals from 33.5 per hour to 9.8 per hour; eliminated his snore; reduced his respiratory index from 66.9 per hour to 3.7 per hour; and eliminated his hypoxic periods and snoring. (Doc. 7-14, p. 22; Doc. 7-17, p. 26). The ALJ concluded that Mr. Thomas undermined his credibility by claiming that the CPAP machine only helped his symptoms "a little bit," in light of a sleep study that documented significant

improvement in Mr. Thomas's sleep with his use of the CPAP machine. (Doc. 7-3, p. 25). Mr. Thomas testified that he uses the CPAP machine every night, and after taking into consideration the results of the sleep study, the ALJ determined that Mr. Thomas's sleep apnea was a non-severe impairment and does not have more than a minimal effect on Mr. Thomas's ability to perform basic work activities. (Doc. 7-3, pp. 25-6; Doc. 7-3, p. 60). Substantial evidence supports this conclusion. See 20 C.F.R. § 404.1521(a).

### B. Mr. Thomas should not be found disabled under Grid Rule 201.10.

On October 29, 2011, the amended alleged onset date, Mr. Thomas was 53 years old. Based on Dr. Hudson's imposition of 10 pound lifting restriction, Mr. Thomas contends that the VA limited him to sedentary work. (Doc. 9, pp. 3-4; *see also* Doc. 7-13, p. 16). Therefore, Mr. Thomas suggests that the ALJ must conclude that Mr. Thomas presumptively is entitled to disability benefits under Grid Rule 201.10. (Doc. 9, pp. 3-4). Under this rule, an individual approaching advanced age (50-54) with a limited education and past work experience at a skilled or semi-skilled level with non-transferable skills is "disabled" under the grid. *See* C.F.R. § 404, Subpart P, Appx. 2, Table 1. Because substantial evidence supports the ALJ's decision that Mr. Thomas can perform light work and is not limited to sedentary work, *see supra* pp. 6-14, the ALJ was not required to consider Grid Rule 201.10.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 3, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE